UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
GLOBALGURU TECH, LLC d/b/a
SELLLOCKED.COM,

Plaintiff,

- against -

TRUSTPILOT, INC.,

Defendant.

--------------------------------------X

**MEMORANDUM AND ORDER DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

26 Civ. 4478 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Presently before the Court is plaintiff GlobalGuru Tech, LLC d/b/a SellLocked.com's ("plaintiff" or "SellLocked") motion for a preliminary injunction. ECF No. 4. Following oral argument on July 16, 2026, and for the reasons discussed below, the Court finds that plaintiff's requested preliminary relief is unwarranted and denies plaintiff's motion.

## I. Background

The facts, essentially undisputed, that gave rise to this lawsuit are as follows. Plaintiff "is a limited liability company" that "owns and operates [the] website SellLocked.com[.]" ECF No. 1 ("Compl.") ¶ 11. Through SellLocked.com, plaintiff "purchases electronic devices from individual consumers online" for purposes of resale. Id. ¶ 16.

Defendant Trustpilot, Inc. ("Trustpilot" or "defendant") "operates an online platform that hosts consumer reviews of businesses worldwide." Id. ¶ 20. Specifically, "Trustpilot calculates a 'TrustScore' for each business based on the reviews it receives, with 5.0 being the highest possible score[.]" Id. ¶ 21.

While not a party to this litigation, another company, SellCell.com ("SellCell"), plays a prominent role in these events. SellCell operates "a website that promotes various electronics buyers to consumers." Id. ¶ 18. As plaintiff describes it, "[w]hen individuals visit SellCell.com seeking to sell their devices, they see advertising for . . . electronics buyers, including customer reviews[.]" Id. ¶ 19. In other words, SellCell operates a comparison website that allows individuals who wish to sell an electronic device to compare the offerings from multiple, unrelated third-party buyers.

## II. The Parties' Business Relationships

Plaintiff has been a customer of Trustpilot for more than five years, during which time plaintiff has "paid a yearly premium for an upgraded Trustpilot plan." Id. ¶¶ 23, 40. "Over that time," plaintiff alleges, plaintiff "has worked diligently to provide excellent customer service, earning over 2,800 five-star reviews and achieving a perfect 5.0 TrustScore." Id. ¶ 24. As relevant here, SellLocked and Trustpilot's business relationship

is governed by, among other terms and agreements, Trustpilot's Legal Brand Guidelines. See ECF No. 20-2 (the "Brand Guidelines"); see also Compl. ¶ 29. The Brand Guidelines govern how Trustpilot customers can use their Trustpilot reviews and TrustScores in their own advertising. Under the Brand Guidelines, "[o]nly customers on one of [Trustpilot's] paid plans can use Trustpilot content (including reviews) in their advertising." Brand Guidelines at 5.[1] Advertising is defined in the Brand Guidelines to mean "paid, public messaging and campaigns relating to your business. Examples of advertising might include paid digital, billboard, radio, and television campaigns." Id. While customers on paid plans may use Trustpilot content in their advertising, Trustpilot sets certain parameters for the use of Trustpilot content in advertising and provides "[e]xamples of misuse" of Trustpilot content, which include using "a [Trustpilot] widget which is not included in your Trustpilot plan, or an unofficial third-party application used to display Trustpilot content." Id. at 7.[2]

Plaintiff also maintains a business relationship with non-party SellCell. Specifically, plaintiff has a self-described "marketing campaign[]" that "involves advertising its services

[1] Citations to the Brand Guidelines throughout this opinion uses the CM/ECF pagination rather than the document pagination.

[2] As Trustpilot describes it, "widgets" are tools that "allow [] business users to embed live Trustpilot content—including their TrustScores, star ratings and reviews—into their platforms[.]" ECF No. 19 ("Opp.") at 3.

through SellCell.com." Compl. ¶ 18. Simply stated, plaintiff is listed on SellCell.com as a potential buyer of used electronic devices. As a result, when a consumer goes to SellCell.com seeking to sell an electronic device, plaintiff is listed as one of several potential buyers for the device. As part of this "marketing campaign," SellLocked has, "[f]or over five years" "displayed its TrustScore and customer reviews on SellCell.com" alongside its listing. Id. ¶ 31.

Defendant also maintains a business relationship with SellCell. SellCell "claimed its Trustpilot profile" and "thereby accept[ed]" Trustpilot's terms and conditions on November 10, 2020. Opp. at 7. Since that time, "SellCell has been on Trustpilot's free plan . . . and [has] never purchased a paid plan from Trustpilot." Id.

**III. The Precipitating Events**

As defendant describes it, "[i]n November 2025, Trustpilot received a report that SellCell[,]" who was using a free Trustpilot plan, "was displaying Trustpilot ratings and static widget[s] for various businesses in violation of" its agreement with Trustpilot. Opp. at 8. Subsequently, on November 27, 2025, "Trustpilot contacted SellCell . . . explaining that SellCell's use of the Trustpilot name and brand alongside the star rating and review count for various business" violated the terms and conditions. Id. Or, as plaintiff puts it, "Trustpilot sent a cease and desist

email to SellCell.com demanding that SellCell.com remove all TrustScores and customer reviews from its website." Compl. ¶ 32. SellCell responded to Trustpilot, "confirm[ing] that it was using a widget that it had built itself to display the star ratings of businesses." Opp. at 8. There is no dispute that SellCell did not have the authority to use "a widget that it had built itself[,]" because while they had a contractual relationship with Trustpilot, the unpaid plan that SellCell was on did not include that right to use unauthorized, third-party widgets to display TrustScores. Opp. at 8; see also Decl. of Ross Hancock, ECF No. 20 ¶¶ 23-24. Indeed, no plan, paid or unpaid, authorizes a Trustpilot customer to use a third-party widget. Opp. at 6 (explaining that it is a violation of Trustpilot's terms to "us[e] . . . 'an unofficial third-party application . . . to display Trustpilot content'") (quoting Brand Guidelines at 7).

Following Trustpilot's cease and desist notification, "[f]rom December 2025 through February 2026, SellCell and Trustpilot discussed the need for SellCell to comply with the terms[,]" and "Trustpilot explained that SellCell must subscribe to a paid TrustSignals plan to continue displaying businesses' star ratings on the SellCell website." Id. at 8. Trustpilot offered a paid subscription to SellCell, but SellCell declined to enter into a paid contractual relationship with Trustpilot. Id. Subsequently, "SellCell.com removed [plaintiff's] TrustScore and customer

reviews from its website," Compl. ¶ 34, and "[o]n February 10, 2026, SellCell confirmed to Trustpilot that it had removed from the SellCell website all uses of Trustpilot's branding, including star ratings for partner businesses[,]" Opp. at 8.[3]

## LEGAL STANDARD

Plaintiff seeks a preliminary injunction requesting various forms of relief, all designed to restore the display of plaintiff's TrustScore on SellCell's website. In this circuit, a party seeking a preliminary injunction must establish: "(1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc., 883 F.3d 32, 37; accord Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."); Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 35 (2d Cir. 2010) ("[A] party seeking a preliminary injunction [must] show

[3] At oral argument, counsel for Trustpilot confirmed that Trustpilot's offer to SellCell to purchase a paid subscription giving it the ability to display TrustScores for all business partners on SellCell.com remains open today.

'(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'").

## DISCUSSION

### I. Plaintiff Has Not Shown a Likelihood of Success on the Merits

SellLocked maintains that under its own contract with Trustpilot, it is entitled to have its TrustScore displayed on SellCell's website as part of its permissible advertising rights. SellLocked's position suffers from two primary infirmities. First, it is undisputed that SellCell "was using a widget that it had built itself to display the star ratings of businesses." Opp. at 8. As such, it is unclear to the Court how the use of SellCell's custom widget can constitute plaintiff's own advertising. Second, regardless of the genesis of the widget, it is not clear to the Court that the display of SellLocked's TrustScore on SellCell.com constitutes advertising under terms of the agreement between SellLocked and Trustpilot. As it was explained to the Court at oral argument, SellCell's business relationship with SellLocked has aspects of a joint venture, whereby SellCell receives payment for each purchase of a used electronic device that is made through SellCell's website. This payment structure is distinct from the structure typically found in traditional advertising relationships

in which the purchaser of the advertisement pays solely for the placement of the advertisement and the advertiser has no financial interest in the outcome or success of the advertisement.[4]

In light of these issues, the Court finds that SellLocked has not shown a likelihood of success on the merits sufficient to warrant the granting of preliminary injunctive relief.

## II. There Is No Serious Question on the Merits

Nor has SellLocked shown that there are any serious questions on the merits that warrant the award of preliminary injunctive relief. "'[A] sufficiently serious question as to the merits of the case to make it a fair ground for litigation' means a question that is so 'substantial, difficult and doubtful' as to require 'a more deliberate investigation.'" Ass'n of Jewish Camp Operators v. Cuomo, 470 F. Supp. 3d 197, 210 (S.D.N.Y. 2020) (quoting Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 740 (2d Cir. 1953)). In this case, the parties largely agree on the relevant facts, and there is no question that SellCell did not have the authority to display TrustScores for plaintiff's business or any other business under its operative agreement with Trustpilot, nor did it have the authority to use an unauthorized third-party widget. Moreover, there is no question that Trustpilot has the right to protect its intellectual property. Accordingly, the Court

[4] SellLocked's failure to join SellCell as a party to this litigation, despite the centrality of SellCell's role in this saga, is itself telling about the nature of the relationship between plaintiff and SellCell.

does not find that there are any questions sufficiently serious to warrant preliminary injunctive relief at this time.

## III. Plaintiff Has Not Shown Irreparable Harm

Regardless, even if SellLocked had shown either a likelihood of success on the merits or the existence of a serious question warranting injunctive relief, SellLocked's request for preliminary injunctive relief would still fall short because SellLocked has failed to show that it is likely to suffer irreparable harm if injunctive relief is not granted.

Regardless of whether a plaintiff proves it is entitled to injunctive relief because it is likely to succeed on the merits or because sufficiently serious questions exist to warrant injunctive relief, a plaintiff must always show irreparable harm for a preliminary injunction to be granted. In fact, the Second Circuit has found that irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction[,]" which must "be satisfied before the other requirements for an injunction can be considered." State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C., 120 F.4th 59, 80 (2d Cir. 2024).

Here, plaintiff's harms are monetary in nature and thus are not irreparable. D'Amico Dry D.A.C. v. Primera Maritime (Hellas) Limited, 431 F. Supp. 3d 317, 319 (S.D.N.Y. 2019) ("It is well-established that 'quantifiable money damages cannot be deemed irreparable harm.'") (quoting Harris v. Butler, 961 F. Supp. 61,

63 (S.D.N.Y. 1997)); Fluor Daniel Argentina, Inc. v. ANZ Bank, 13 F. Supp. 2d 562, 564 (S.D.N.Y. 1998) ("As a matter of law, '[m]onetary loss alone will generally not amount to irreparable harm.'") (alteration in original) (quoting Borey v. Nat'l Union Fire Ins. Co., 934 F.2d 30, 34 (2d Cir. 1991)). Plaintiff argues that it has been harmed by lost sales in the weeks following the removal of its TrustScore from SellCell's website, and that its "conversion rate dropped"[5] during the same period. ECF No. 29 ("Reply") at 7. Plaintiff further argues that "[i]t is impossible to determine how many potential customers chose not to sell their devices to [plaintiff] because [plaintiff] was unable to display its TrustScore" on SellCell's website. Id. at 6. Not so.

While it may be difficult to quantify SellLocked's lost purchases with absolute precision, it is not impossible to calculate lost sales. A difficulty quantifying damages does not render those damages unquantifiable such that they constitute irreparable harm. See e.g., Mezu-Ndubuisi v. University of Rochester, 2026 WL 456740, at *3 (2d Cir. Feb. 18, 2026) (rejecting the argument that harm was irreparable on the basis that "damages would be complex or difficult to manage" because there was no evidence that the damages calculation would be "so uncertain or difficult as to make [plaintiff's] injuries irreparable.")

[5] As it was explained to the Court at oral argument, plaintiff's "conversion rate" is a metric measuring the rate at which consumers who click on SellLocked's offer on SellCell.com proceed to finalize the transaction with SellLocked.

(summary order); Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 427 (2d Cir. 2004) (finding that "damages calculations based on [plaintiff's] lost business opportunities, although potentially complicated, is the type of calculation commonly required in contract disputes" and therefore the "grant of an injunction based on the possibility of irreparable harm was an abuse of discretion."); CRP/Extell Parcel I, L.P. v. Cuomo, 394 Fed. Appx. 779, 781 (2d Cir. 2010) ("That damages are difficult to measure does not necessarily make otherwise compensable harm irreparable[,]" and the Second Circuit "ha[s] not held that a mere 'difficulty' in calculating damages is sufficient to establish irreparable harm.") (summary order). Further, monetary "compensation need only be 'adequate' for preliminary relief to be unwarranted, not perfect." Daileader v. Certain Underwriters at Lloyds London Syndicate 1861, 96 F.4th 351, 358 (2d Cir. 2024). Plaintiff's alleged damages are quantifiable and adequate to redress any harm to plaintiff that arises during the pendency of this litigation. As such, plaintiff has not identified irreparable harm sufficient to warrant the entrance of preliminary injunctive relief.

## IV. Plaintiff's Requested Relief

Additionally, while plaintiff's failure to show irreparable harm or a likelihood of success on the merits is sufficient basis to deny preliminary injunctive relief, there are also concrete

issues with the preliminary injunctive relief that plaintiff seeks in this case. First, plaintiff asks this Court to order Trustpilot to "[w]ithdraw the cease and desist letter sent to SellCell.com[.]" ECF No. 4 at 1. However, as discussed above, the parties do not dispute that SellCell was using an unauthorized, self-designed, third-party widget to display TrustScores on its website in violation of its contractual agreement with Trustpilot. As such, Trustpilot was entitled to send a cease and desist letter to protect its intellectual property rights, and thus there is no basis for requiring Trustpilot to withdraw the cease and desist letter.

Second, plaintiff asks the Court to order defendant to "[s]end a communication to SellCell.com confirming that Trustpilot does not object to the display of [plaintiff's] TrustScore and customer reviews[.]" Id. Here, where SellCell has been offered a paid Trustpilot subscription that would allow it to display plaintiff's TrustScore and customer reviews and when SellCell declined to purchase a subscription, it would be unreasonable to require Trustpilot to waive its objection to the unauthorized display of Trustscores and customer reviews and provide its service for free. As noted earlier, Trustpilot has the right to protect its intellectual property. Moreover, such an order would be particularly problematic considering that SellCell has for years

displayed TrustScores for numerous business entities, not just plaintiff without compensating Trustpilot for the right to do so.

Third, plaintiff asks the Court to order Trustpilot to "[r]efrain from sending cease and desist letters or threatening litigation against SellCell.com or any other third party regarding the display of [plaintiff's] TrustScore and customer reviews." Id. at 2. Such sweeping and speculative relief is unwarranted in this case. The Court will not preemptively prevent Trustpilot from protecting its intellectual property rights against any and all third parties, known and unknown, as such third parties may be violating Trustpilot's intellectual property rights as well.

Lastly, plaintiff asks the Court to order Trustpilot to "[r]efrain from interfering with [plaintiff's] advertising relationships during the pendency of this action." Id. For the reasons stated above in this opinion, the Court does not believe, on the record presently before us, that Trustpilot has interfered with plaintiff's advertising relationships. Nor is there any indication that Trustpilot has taken, or intends to take, any action against additional third parties that properly display plaintiff's TrustScore and customer reviews.

**CONCLUSION**

For the foregoing reasons, the Court denies plaintiff's motion for a preliminary injunction. The Clerk of Court is

respectfully directed to terminate the motion pending at ECF No. 4.

Dated: July 23, 2026
New York, New York

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE